UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY WILLIAM ABELIA,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.  2:23-cv-01224 AC<br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), discontinuing plaintiff's disability benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34,[1] pursuant to 223(f) of the Social Security Act.  For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

I.  PROCEDURAL BACKGROUND

Plaintiff's initial application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) was granted on April 25, 1996, and deemed effective October 15, 1995. 42 U.S.C. §§ 416, 423, certified administrative record (AR) 103, 123.  The Social Security

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

Administration later determined initially and upon reconsideration that plaintiff's disability ceased on October 1, 2018, and his period of disability terminated on December 31, 2018.  AR 114, 119.  Plaintiff requested and attended a July 2018 hearing, but it was continued so that he could try to obtain representation.  AR 96-102.  Plaintiff appeared unrepresented at an October 2020 hearing.  AR 81.  The ALJ issued an unfavorable decision that was remanded by the Appeals Council.  AR 123-140, 146-47.  On remand, the ALJ held a March 2022 hearing that was continued so that plaintiff could seek representation.  AR 74-79.  The hearing was re-set for July 2022, but that hearing was again continued so that plaintiff could appear via video teleconference instead of telephonically, at plaintiff's request.  AR 67-73.

Plaintiff appeared unrepresented at September 2022 hearing, via video teleconference.  AR 51-66.  On November 3, 2022, the ALJ issued the hearing decision finding that plaintiff's disability ended on October 1, 2018, and that plaintiff has not been disabled as of that date.  AR 24-41.  That decision became final when the Appeals Council declined to review it.  AR 1-5.  Plaintiff timely commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the magistrate judge.  ECF No. 17.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 18 (plaintiff's summary judgment motion), 23 (Commissioner's summary judgment motion).

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1972 and at the time of the most recent ALJ order, plaintiff was categorized as an individual closely approaching advanced age.[2]  AR 45.  Plaintiff has a high school education.  AR 58.  Plaintiff has no work history for 15 years prior to the date of the ALJ's decision.  Id.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

---

[2]  See 20 C.F.R. § 404.1563(e) ("person closely approaching advanced age").

2

1   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews
2   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

3       Substantial evidence is "more than a mere scintilla," but "may be less than a
4   preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such
5   evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.
6   Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the
7   record can constitute substantial evidence, only those 'reasonably drawn from the record' will
8   suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).
9   Although this court cannot substitute its discretion for that of the Commissioner, the court
10  nonetheless must review the record as a whole, "weighing both the evidence that supports and the
11  evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS,
12  846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The
13  court must consider both evidence that supports and evidence that detracts from the ALJ's
14  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

15      "The ALJ is responsible for determining credibility, resolving conflicts in medical
16  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th
17  Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of
18  which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,
19  278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the
20  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn
21  v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.
22  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on
23  evidence that the ALJ did not discuss").

24      The court will not reverse the Commissioner's decision if it is based on harmless error,
25  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the
26  ultimate nondisability determination.'" Robbins v. Commissioner, 466 F.3d 880, 885 (9th Cir.
27  2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.
28  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

# IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

To determine if the claimant continues to be disabled after a prior finding of disability, the ALJ must follow an eight-step evaluation process (20 CFR 404.1594).  The evaluation process proceeds as follows:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 CFR 404.1594(f)(1).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

20 CFR 404.1594(f)(2).

> Step three: Has medical improvement occurred?  Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings (20 CFR 404.1594(b)(1)).  If medical improvement has occurred, the analysis proceeds to the fourth step.  If not, the analysis proceeds to the fifth step.

20 CFR 404.1594(f)(3).

> Step four: Is the medical improvement is related to the ability to work?  Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 404.1594(b)(3)).  If it does, the analysis proceeds to the sixth step.

20 CFR 404.1594(f)(4).

> Step five: Does an exception to medical improvement apply?  There are two groups of exceptions (20 CFR 404.1594(d) and (e)).  If one of the first group exceptions applies, the analysis proceeds to the next step.  If one of the second group exceptions applies, the claimant's disability ends.  If none apply, the claimant's disability continues.

20 CFR 404.1594(f)(5).

> Step six: Are all the claimant's current impairments, in combination, severe?  If all current impairments in combination do not

significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.

20 CFR 404.1594(f)(6).

Step seven: The ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if he can perform past relevant work. If the claimant has the capacity to perform past relevant work, his disability has ended. If not, the analysis proceeds to the last step.

20 CFR 404.1594(f)(7).

Step eight: The ALJ must determine whether other work exists that the claimant can perform, given his residual functional capacity and considering his age, education, and past work experience. If the claimant can perform other work, he is no longer disabled. If the claimant cannot perform other work, his disability continues. To support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

20 CFR 404.1594(f)(8).

## V. THE ALJ's DECISION

The ALJ made the following findings:

1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated May 1, 1996. This is known as the "comparison point decision" or CPD. (Exhibit 1A, page 1.).

2. At the time of the CPD, the claimant had the following medically determinable impairments: Human immunodeficiency virus infection (HIV) and cryptosporidiosis [infection causing diarrhea]. These impairments were found to result in the residual functional capacity for less than sedentary work. (Exhibits 1A, page 1, and 2A, page 4.)

3. Through the date of this decision, the claimant has not engaged in substantial gainful activity (SGA) (20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that, since October 1, 2018, the claimant has had the following severe medically determinable impairments: HIV; acquired immunodeficiency syndrome (AIDS); cryptosporidiosis; gastroesophageal reflux disease (GERD); chronic pain syndrome (CPS); degenerative disc disease of the lumbar spine; osteoarthritis of the bilateral elbows with tendonitis; and depressive disorder. These are the claimant's current severe impairments.

5. [Step 2] Since October 1, 2018, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).).

6. Medical improvement occurred on October 1, 2018 (20 CFR 404.1594(b)(1)).

7. Since October 1, 2018, the impairments present at the time of the CPD decreased in medical severity to the point where the claimant has had the residual functional capacity to perform at least the full range of unskilled light work as defined in 20 CFR 404.1567(b).

8. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

9. Since October 1, 2018, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

10. Based on the impairments present since October 1, 2018, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with the following limitations: The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for approximately six hours and sit for six or more hours in an eight-hour workday with normal breaks. The claimant cannot climb ladders, ropes, and scaffold and he can occasionally climb stairs and ramps. The claimant can frequently stoop and crouch. He can occasionally kneel and crawl. He can occasionally balance as described in the Selected Characteristics of Occupations (SCO) in the Dictionary of Occupational Titles (DOT). The claimant can frequently reach in all directions with the bilateral upper extremities. The claimant should have no exposure to moving mechanical parts and high, exposed place hazards, as rated by the SCO. The claimant can understand, remember, and carry out simple instructions and tasks.

11. The claimant has no past relevant work (20 CFR 404.1565).

12. On October 1, 2018, the claimant was a younger individual age 18-49 (20 CFR 404.1563).

13. The claimant has at least a high school education (20 CFR 404.1563).

14. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).).

15. Since October 1, 2018, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present since October 1, 2018, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

> 16. The claimant's disability ended on October 1, 2018, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8)).

AR 27-41.  As noted, the ALJ concluded that plaintiff's period of disability ended on October 1, 2018, and he has not become disabled again since that date.  AR 41.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to ensure the record was fully developed with respect to plaintiff's mental health; and (2) allowing plaintiff, who was proceeding without counsel at the administrative hearing level, to be prejudiced by failing to develop the record regarding plaintiff's fecal incontinence.  ECF No. 18 at 2.  Plaintiff requests that the matter be remanded to the Commissioner for a new hearing.  Id. at 20.

### A.   The ALJ Was Not Required to Further Develop the Record Regarding Depression

Plaintiff asserts that the ALJ erred by not developing the record with respect to plaintiff's new medically determinable severe impairment of depression.  ECF No. 18 at 12-18.  The ALJ's opinion with respect to the impairment of depression reads as follows:

> The claimant's medical record shows that he had developed a new "severe mental impairment" since the CPD as well, specifically a depressive disorder.  He was diagnosed with a depressive disorder in January 2008, but it is remarkable that it is not clear that he has required any significant treatment for that disorder since 2008 or the cessation date on October 1, 2018.  His treatment notes show that he is prescribed Zolpidem (Ambien) for insomnia, but his insomnia has not been noted as a symptom of or as otherwise related to his depressive disorder. He has not been prescribed other psychiatric or related medications. The claimant did briefly attend psychotherapy in late 2020, which was the closest he came to receiving specialized mental health treatment for his depressive disorder throughout the period at issue. Moreover, other than appearing anxious once, the claimant has had normal or unremarkable psychiatric examination findings with no signs of consistent or persistent behavioral or cognitive abnormalities. The claimant's minimal mental health treatment and generally normal psychiatric examination findings indicated that his severe depressive disorder has had a limited impact on his mental functioning since October 1, 2018.

AR 29-30.

Medical records indicate that plaintiff was first diagnosed with depression in January 2008.  AR 543.  The record contains very limited documentation of mental health treatment.  On July 15, 2020, plaintiff's self-reported symptoms were consistent with minimal depression.  AR

1062. An examination that day was unremarkable, and plaintiff's mood, memory, and affect were normal. AR 1079. In September 2020, plaintiff's anxiety and depression were deemed to have improved moderately. AR 1063. On October 6, 2020, plaintiff presented to Luz Contreras Arroyo, M.D., for a psychiatric consultation. AR 1056. Plaintiff endorsed depression, low energy and motivation, and poor appetite. Id. Plaintiff stated that he worked as a bartender two days a week. Id. Upon examination, plaintiff exhibited normal behavior and speech, dysphoric mood, normal thought process, and fair insight and judgment. AR 1058. Plaintiff ended the encounter halfway through the session before Dr. Arroyo could discuss medication or treatment. AR 1060.

The only relevant medical opinion in the record is that of plaintiff's treating physician Dr. Richard Pollard, dated August 31, 2018. AR 680. Dr. Pollard indicated that he managed plaintiff's depressive disorder but did not assign any limitations specifically related to depression, and indicated that no referral had been made to a mental health practitioner. Id. There are no prior administrative findings regarding depression. L. Colsky, M.D., a State agency psychological consultant, reviewed the medical record, and found that plaintiff did not have a medically determinable mental impairment, and, therefore, had no mental limitations. AR 770-84.

The ALJ has a duty to further develop the record only when the ALJ finds that the evidence is ambiguous or if the record is so inadequate that it prevents her from evaluating the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"). An ALJ has a heightened duty to develop the record when an unrepresented claimant "may be mentally ill and thus unable to protect her own interests." Tonapetyan v. Halter, 424 F.3d 1144, 1150 (9th Cir. 2001). However, where the record is not ambiguous, there is no duty to develop the record, even if the plaintiff is unrepresented. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate," is what triggers the duty to develop the record. Id. That the evidence presented by plaintiff did not support a finding of disability does not render the record inadequate or ambiguous. Ukolov v.

8

1  Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("The claimant carries the initial burden of proving
2  a disability" and "[f]ailure to prove disability justifies a denial of benefits").
3          Here, plaintiff fails to establish that additional development was required because he has
4  not shown that the record was not ambiguous or undeveloped.  The court finds that the record was
5  not ambiguous.  Though the medical record is lengthy, it contains little specialized treatment prior
6  to the cessation date, with plaintiff often denying anxiety or depression (AR 549-50, 555-56, 598,
7  605-06, 609-10, 628, 634, 689) and presenting normally during mental status examinations (AR
8  546, 551, 599, 607, 611, 629, 690).  Since the cessation date, plaintiff continued to deny active
9  depression or anxiety symptoms (AR 804, 805, 815, 854, 927, 983, 991, 1013, 1022), and
10 numerous examinations were largely unremarkable with findings of normal mood, memory,
11 affect, and/or judgment (AR 685, 806, 817, 829, 857, 933, 940, 984, 1004, 1018, 1042, 1072,
12 1286, 1325).  At the hearing, the ALJ asked plaintiff if he was seeing anyone for his mental
13 health, and he stated he was not; he was only seeing his case manager doctor.  AR 54.
14         The lack of treatment and history of largely unremarkable findings do not make the record
15 ambiguous.  No medical record refers to plaintiff's mental health status as ambiguous, nor does
16 the record present inconsistencies such that the ALJ would be unable to properly draw
17 conclusions regarding plaintiff's mental health from the record.  Plaintiff did not establish that
18 further development was required with respect to plaintiff's depression.  The court does not find
19 error.
20         B.  The ALJ Adequately Addressed Plaintiff's Incontinence
21         Plaintiff argues that he was prejudiced by not having counsel in his appearance before the
22 ALJ because the ALJ did not explore the issue of fecal incontinence with the vocational expert or
23 fully develop the issue.  ECF No. 18 at 14-20.  Notably, plaintiff does not challenge the ALJ's
24 residual functional capacity assessment or the ALJ's treatment of plaintiff's subjective testimony;
25 instead, plaintiff argues that his waiver of counsel was deficient and that, even if the waiver was
26 not deficient, he was prejudiced by the ALJ's failure to investigate and explore the relevant facts
27 regarding his fecal incontinence.  Id. at 15.  The court disagrees, finding that plaintiff knowingly
28 and intelligently waived counsel, and that the ALJ fully and adequately explored the issue

plaintiff's alleged impairment of fecal incontinence.

Plaintiff had a statutory right to counsel at the administrative hearing, which can be knowingly and intelligently waived. Duns v. Heckler, 586 F.Supp. 359, 364 (N.D. Cal. 1984). Even where a waiver is deficient, a plaintiff must demonstrate prejudice or unfairness in the proceedings to obtain a remand. Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1378 (9th Cir. 1979). Accordingly, the key concern is not whether the waiver was knowing or intelligent but whether, without the representation, the ALJ met her heightened duty "to conscientiously and scrupulously probe into, inquire of, and explore for all the relevant facts" to protect plaintiff's interests. Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981); Cox v. Califano, 587 F.2d 988 (9th Cir. 1978). This duty includes diligently ensuring that both favorable and unfavorable facts and circumstances are elicited at the administrative hearing. Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all the relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

In this case, several aspects of the record demonstrate that (1) plaintiff's waiver of counsel was knowing and intelligent, and (2) remand is not necessary because the ALJ fully considered the issue of plaintiff's fecal incontinence, and any error was harmless at most. As to the first issue, plaintiff expressed his desire for an attorney multiple times, but it is also clear he understood that it was his responsibility to find an attorney, and he did not find one. On March 7, 2022, plaintiff appeared via telephone at a hearing. AR 76. At that hearing, plaintiff expressed his desire for an attorney, and was given a one-time continuance. AR 78. Plaintiff asked where he could get an attorney. Id. The ALJ informed plaintiff that he needed to find his own representative, and that he should have gotten a sheet of paper with some places he could call when he got his initial hearing notice, and that he could ask his social worker at his treatment center for help. Id. The ALJ told plaintiff that it was his responsibility to find a representative. AR 79.

At the continued hearing on July 29, 2022, plaintiff still did not have counsel. He stated "it is too much (INAUDIBLE) or too -- I mean too short of notice" (AR 70) and then asked if "is

there any other way to, I mean, to show up in Court" other than appear by phone, but he did not know where the hearing office was. AR 72-73. Plaintiff again expressed confusion over where to find an attorney: "I even asked the Social Security if they could point me a lawyer out" to which the ALJ responded once again, "Social Security does not appoint – this isn't like, you know, going to Court, we don't appoint lawyers or attorneys. You've indicated that you want a VTC hearing and I can put it through for that, which means you're going to have a little bit more of a delay. So, I would suggest that if you do want a representative that you start looking today and not wait because there won't be any further continuances, you understand that?" AR 72. Despite the fact six months had passed since the first postponement, on September 28, 2022, Mr. Abelia appeared and testified that he did not have an attorney because "it was hard to find one." AR 51. It is clear that, though plaintiff would have preferred to proceed with counsel, the ALJ fully informed him of his options and responsibilities, he received multiple continuances, he did not obtain counsel, and he chose to proceed with the hearing even though he remained unrepresented. Plaintiff thus knowingly and intelligently waived counsel.

As to the second issue, even if plaintiff's waiver of counsel was inadequate, the ALJ fully addressed the issue of fecal incontinence. As described by the Commissioner, "Plaintiff's argument boils down to him wanting to ask the vocational expert about fecal incontinence, and his disagreement with the ALJ's decision to not develop the issue with the vocational expert at the hearing." ECF No. 23 at 12. The Commissioner argues that plaintiff's argument is improperly raised because he failed to challenge the actual RFC finding regarding his physical impairments, including fecal incontinence, or the ALJ's assessment of plaintiff's subjective statements. Id. at 12-14.

It is clear from the record that plaintiff wanted to raise the issue of incontinence with the vocational expert. Plaintiff interrupted multiple times during the VE Testimony when the ALJ was offering the hypothetical:

> [ALJ]: Mr. Abelia, are there any questions you'd like me to address to the vocational expert on your behalf?
>
> [Abila]: Yes. Can you put any of them close to the restroom like you told me at the first hearing? It was kind of rude but you told me you'll

11

        find me a desk job next to the restroom when I told you about my restroom problems and you did the first time I talked to you and it was just very, very rude. I don't know why you would make a remark like that.

        [ALJ]: I know. I'm just curious. It's not up to me whether there's a job. I simply ask the questions of the vocational expert.

        [Abila]: But you don't have the diseases I have. When I was talking to you and you told me that, that was rude, very rude, and I told a lot of people and they said that you are rude. When I have the cramps and I have to use a restroom and I don't make it to the restroom, it goes all over me. It's embarrassing.

        [ALJ]: Can I ask you a question, sir?

        [Abila]: And another thing, I can't stand for six hours and all that. It really pisses me off because you are a Judge that's supposed to respect people with diseases.

        ALJ: Well, sir, I don't disrespect you but I need to follow the law and I have to ask certain questions.

        [Abila]: You don't seem to understand because you don't have those restroom problems It's just rude. And for me to back down and not talk back to you, it's just I don't like rude people. And for you saying that --

        ALJ: I think that saying that I would ask the VE if there were any jobs next to the restroom is not rude but it's part of the law. I have to explore all the limitations that you might have. Okay? So no, I don't think it was rude and I do want to ask you a question about that. How did you manage to work for so long at the same establishment as a bartender?

        CL: Because the other bartender was there and I used to tell him I'd be right back that I had to go to the restroom. And I went to the restroom when I had to. I mean, when you get those bad cramps, as when you were younger getting your period, it's cramps like that.

AR 62-63.

        In plaintiff's testimony, he identified his incontinence as a reason he has not looked for employment. AR 54. The ALJ did not ask the vocational expert about fecal incontinence.

        However, even if the court were to find that the ALJ erred by not asking the vocational expert about limitations related to incontinence, there would be no reversable error because the ALJ clearly concluded in her opinion that the evidence did not support assigning any such limitations. Indeed, the ALJ "took particular note of [plaintiff's] alleged problems with diarrhea and related complications, which he emphasized at the September 28, 2022 hearing." AR 37.

The ALJ found that the complaint did not warrant functional restrictions because the record showed plaintiff "stopped complaining of diarrhea or bowel incontinence around June 2021, suggesting that it resolved as his viral loads improved or with treatment of his GERD and nonsevere H. pylori infection" and noted that "even during the period between July 2019 and June 2021, it was noteworthy that the claimant was not noted to require or use protective undergarments despite the alleged intensity, persistence, and limiting effects of his diarrhea or bowel incontinence, which instead suggested that the problem was relatively mild." AR 37. The ALJ further concluded that plaintiff's "work as a bartender off and on after the CPD and October 1, 2018 further undermine the alleged severity of his diarrhea or bowel incontinence and again further suggested that the problem was relatively mild." Id.

Plaintiff has not shown that the record is ambiguous or undeveloped. Though plaintiff attempts to show ambiguity by referencing the ALJ's finding that the etiology of plaintiff's incontinence was unclear, the court is not persuaded: ambiguity as to the etiology of the incontinence is irrelevant because regardless of the source of the symptom, the symptom itself is what creates a need for functional restrictions, and there is no ambiguity as to the severity of the symptom itself. ECF No. 18 at 18. Because the ALJ fully evaluated plaintiff's testimony and the record regarding fecal incontinence and developed an RFC with no limitations related to incontinence (which plaintiff does not challenge), even if there was vocational expert testimony that the need for extra bathroom breaks precluded all work, it would not change the outcome of this case because plaintiff can establish, at most, harmless error. Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination). Accordingly, he court finds no reversible error.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 23), is GRANTED;

////

3. The Clerk of the Court shall enter judgment for the Commissioner, and close this case.

DATED: September 16, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE